ALLEN *v.* BRAME.

Opinion delivered February 13, 1911.

SALE OF LAND—DEPOSIT OF PURCHASE MONEY—RESCISSION—LIABILITY OF VENDOR.—S. contracted to sell certain land to B., and subsequently agreed to sell the same land to A. S.'s agent without authority delivered a deed from S. conveying the land to A., who paid the purchase money to a bank to be held until the contract of B. should be cancelled. S. thereafter conveyed the land to B., and requested A. to return the deed which he held, and withdraw his money from the bank, which A. failed to do. Subsequently the bank which held A.'s money failed. *Held* that A. was not entitled to look either to B. or to S. for the money which was lost in the bank's failure.

Appeal from Lafayette Chancery Court; *J. M. Barker,* Chancellor; affirmed.

*Yeaman & Yeaman* and *James D. Head,* for appellant.

*Searcy & Parks* and *Henry Moore, Jr.,* for appellee.

McCULLOCH, C. J. Dr. B. F. Slusher and his wife, then residing in Lafayette County, Arkansas, owned the large tract of unimproved lands in that county which is involved in this

controversy, and on August 26, 1907, they entered into a written contract with appellee, Frank Brame, for the sale of said land to him for the sum of $8,500, payable $250 cash, and four installments of $250 each, payable in one, two, three and four months, respectively, and $1,584 payable January 1, 1908, on which last named date the vendors were to execute a deed reserving lien for the remainder of the purchase price—$1,888 due January 1, 1909, $1,889 due January 1, 1910, and $1,889 due January 1, 1911.

The contract misdescribed the lands, and the vendors attempted to correct the error by a new contract, dated January 8, 1908; but the last contract omitted the description of 240 acres of the land, and Brame declined to accept it until correction should be made embracing all of the tracts which the vendors had agreed to sell to him. About that time the vendors offered to execute a deed containing a correct description of all the lands, but Brame insisted on a correction of the contract. This part of the controversy is unimportant, since the vendors did in fact correct the contract by inserting a description of the omitted tract of 240 acres, and the corrected contract was delivered to Brame, and on March 12, 1908, was signed and accepted by him, his acknowledgment to the instrument being taken on that day by Slusher's agent as notary public.

Brame immediately filed the contract for record in the office of the recorder of deeds for that county, and the same was duly placed on the records. The Slushers had, on March 7, 1908, instituted an action against Brame in the chancery court of Lafayette County to cancel the contract, and the suit was not dismissed when Brame accepted the corrected contract. Brame demurred to the complaint at the April term, 1908, of the chancery court, and the case stood on his demurrer until the October term of the court, when it was voluntarily dismissed by the Slushers, who appeared for that purpose by their attorneys.

When the contract was corrected, Brame tendered to the Slushers' agent the installments due on the purchase price, but the tender was refused, and subsequently another tender was made and refused, but said agent offered to purchase Brame's equity for a consideration. There is a sharp conflict in the testimony on this point, but the chancellor's finding is not, we think,

against the preponderance of the testimony, and under well-settled rules must be taken as correct.

Some time during the month of March, 1908, the Slushers gave to J. O. Smith, who was cashier of the Merchants' & Farmers' Bank of Lewisville, Arkansas, an option in writing to purchase these lands for $10,000 on condition that the Brame contract could be cancelled and abrogated. That contract has not been brought into the record, nor are its terms disclosed in the record. It does not appear when it expired.

On May 20, 1908, Smith, pretending to act for the Slushers, executed to appellant, C. V. Allen, a contract in writing for the sale of this land at the price of $12,000, and Allen paid $1,000 on the purchase price in the nature of earnest money. On June 19, 1908, Smith notified Dr. Slusher by wire (the Slushers having in the meantime moved to Colorado) that he had an offer of eight thousand dollars for the land, and that one thousand dollars was to be paid over as a forfeit. Dr. Slusher wired acceptance of the offer. This transaction had reference to the sale to Allen, which Slusher then understood was to be for a consideration of $8,000, and the Slushers accepted the contract on the condition that the Brame contract could be cancelled.

The Slushers executed a deed to Allen dated July 14, 1908, and sent it by mail to the Merchants' & Farmers' Bank of Lewisville, with written instruction to "hold until record is clear and Mr. Allen buys draft for $8,000 less the Goss mortgage, and sends to us here." J. W. Warren, who was acting with Smith in negotiating the sale to Allen, took the deed to Henderson, Kentucky, and there delivered the deed to Allen about August 1, 1908, the deed having been either taken there by Warren or sent there by the Merchants' & Planters' Bank attached to a draft on Allen, and the latter subsequently paid the balance of the agreed price of $12,000 on drafts of Smith. The delivery of the deed was made without the knowledge of the Slushers, who, being urged to do so in order to close the deal, executed and caused to be delivered to Allen the following writing, dated August 18, 1908:

"Whereas, the undersigned, B. F. Slusher and his wife, Rena B. Slusher, have conveyed to C. V. Allen of Webster County, Kentucky, certain lands in Lafayette County, Arkansas, lying in

sections 9, 10, 11, 15 and 16, the deed to which is dated July 14, 1908; and,

"Whereas, there may be a cloud upon the title to said land growing out of the fact that one Frank Brame holds a contract for the purchase thereof, suit to cancel which contract is pending in the chancery court of said Lafayette County.

"Now, the said Slusher and his wife, Rena B. Slusher, agree and request that the said Allen leave the purchase price of said lands in the hands and possession of the Merchants' & Farmers' Bank, of Lewisville, Ark., until such time as all questions growing out of the contract with said Brame may be settled by judgment of court or otherwise, and all cloud upon said land, growing out of said contract, removed, which purchase price will be held by said bank for and on account of, and at the risk of, the undersigned, B. F. Slusher and Rena B. Slusher, and when so paid to the bank by said Allen will be in full settlement of the purchase price of said land, but the purchase price is to be returned by said bank to said Allen unless the cloud upon the land growing out of the contract with Brame should be removed by judgment of court or otherwise. When said cloud is so removed, then said purchase price is to be paid over by the bank to said Slusher and wife."

The deed to Allen had been recorded in the office of the recorder at Lewisville on August 3, 1908, but, as before stated, this was without the knowledge of the Slushers. Of the purchase price Allen paid $3,000 on July 31, and the remainder of $7,840 (after deducting $160 allowed as a discount by Smith and Warren) was paid on September 4, 1908. As before stated, these payments were made on drafts of Smith.

Early in September, the Slushers received information that the deed had been delivered and recorded, and also learned for the first time that the price of the land in the sale to Allen was $12,000, instead of $8,000, as they had been informed by Smith. Dr. Slusher immediately wrote to Allen, who lived in Kentucky, calling attention to the fact that the deed had been delivered contrary to instructions, and also referring to the agreement for the bank to hold the deed until the Brame contract should be cancelled. The Slushers also learned, shortly afterwards, for the

first time, as they claim, of Brame's prior tender to Slusher's agent.

Dr. Slusher came to Lewisville to attend the October term of the chancery court, and while he was there Brame again tendered the amount due under the contract, and, being advised by his attorneys that the Brame contract still subsisted and was binding on him, he accepted the money, and he and his wife executed a deed to Brame conveying the lands to him pursuant to the terms of the contract, taking notes for the deferred payments. Soon afterwards, during the month of October, he went to Kentucky to see Allen and there demanded of the latter a reconveyance of the land, and also demanded that he take his money back from the bank at Lewisville, Arkansas. Allen declined to do anything, stating at the time that he would see his attorneys about it.

Nothing further was done, and the Merchants' & Farmers' Bank failed on January 20, 1909, and was found to be hopelessly insolvent. It is conceded that throughout all these transactions Allen knew of the Brame contract, and Brame knew of the deed to Allen when he accepted the deed from the Slushers in October. Brame subsequently conveyed certain undivided interests in the lands to his co-appellees, and on March 9, 1909, they instituted this action in the chancery court of Lafayette County against Allen to cancel the deed to Allen as a cloud on their title. Allen filed his answer and cross complaint, alleging that Brame had failed to carry out or to offer to carry out his said contract with the Slushers, and thereby forfeited all rights thereunder, and prayed that the deed from the Slushers to Brame be cancelled as a cloud on his (Allen's) title. He also prayed that, if the court should uphold the conveyance to Brame, he (Allen) be held to be subrogated by virtue of his contract with the Slushers to their right to collect the purchase price from Brame. On final hearing of the cause, the court dismissed the cross complaint for want of equity, and granted the prayer of the complaint, quieting the title of appellees.

The first question presented is whether Brame was entitled to have his contract of purchase performed, or whether he had forfeited his rights thereunder by failure or refusal to perform the contract himself by payment of the installments of the purchase price as they became due. If it be found that he forfeited

his rights, then the controversy is at an end; for, if Brame's contract be put out of the way, appellant is entitled to have his contract and the deed to him enforced.

Brame had a right to insist on a correction of the contract before he paid the stipulated price, or the installments thereof then due. As soon as this was done, he tendered the amount of the installments, which were refused by the agent of the vendors. The vendors, instead of accepting the tender, insisted on prosecuting a suit against Brame to cancel the contract. When Dr. Slusher came to Lafayette County to attend the term of court at which the suit was to come up, Brame again tendered the amount due, and Dr. Slusher accepted it. There is a conflict in the testimony on these points, as we have already stated, but we cannot say that the testimony does not support the findings of the chancellor. Brame was not in default, and did not forfeit his right to insist on performance of the contract. His equities were first in point of time, and must prevail over appellant's, so far as concerns his right to have the land under his contract.

It being settled, then, that Brame was entitled to have his contract with the Slushers performed by a conveyance of the land, what were appellant's rights under his contract of purchase and the deed executed to him pursuant thereto?

The contract with appellant was made dependent upon the cancellation of the prior contract with Brame. It is contended by appellant that the deed to him was delivered, that he paid the purchase price, and that, even if Brame's contract was enforcible, he (appellant) became subrogated to the right of the Slushers to collect the purchase price from Brame; in other words, that the conveyance to him from the Slushers passed the legal title to the lands and all the rights they had, which included the purchase price which Brame had agreed to pay for the land. If that contention be sound, Brame is not entitled to have appellant's deed cancelled without being required to do equity by paying to appellant the price of the land according to the terms of his contract with the Slushers. On the other hand, it is insisted by appellees that the deed to appellant was improperly delivered without authority from the Slushers, and did not pass the legal title to appellant.

The testimony convinces us, as it did the chancellor, that

the deed was delivered to appellant without the actual knowledge of the Slushers and contrary to their express instructions; but the contract subsequently entered into with appellant concerning the deposit of the money in bank seems to have contemplated a delivery of the deed. We construe that contract, however, to mean a delivery of the deed on condition that the conveyance should be operative only when the Brame contract should be cancelled, and that, if the Brame contract could not be removed by a judgment of court or otherwise, then the price should be returned. Such is the express language of the contract. While it was executed for the benefit of appellant, it implied a corresponding obligation on his part to accept a return of the purchase price in the event that the Brame contract should turn out to be superior.

Conceding that appellant could waive the return of the money held in bank and insist on Brame paying the purchase money to him, he could not do this without permitting the Slushers to take the money in the bank. He could not claim a return of the money held in the bank, or even insist on it being held in bank, and at the same time demand payment of the purchase money from Brame. The contract concerning the funds can be construed only to mean that the same should be held as indemnity to appellant to protect him in the event the Brame contract should be found to be superior to his; and, since we hold that the Brame contract was in fact superior, appellant was bound either to accept a return of the money held in bank or to relinquish his claim to it and allow it to be paid over to the Slushers. He did neither. The money was in bank at the risk of the Slushers, but not under their control. They had no right to withdraw it unless the Brame contract should be cancelled or unless appellant authorized its withdrawal. Appellant had no right to speculate on the result by waiting until the bank failed and then claim the right to collect the purchase price under the Brame contract. He was notified by Dr. Slusher that the Brame contract was enforcible—at least, that he had been advised that it could be enforced against them—and that they had performed it as far as they could by executing a deed to Brame; and it was appellant's duty to make his choice then, without unreasonable delay, whether he would accept a return of the money in bank or relinquish his right to a return

thereof and look to Brame for the purchase price. Having failed to do that, he must bear the loss of the funds, and cannot now put the loss on the Slushers or Brame. The conduct of Allen at the time Slusher demanded a reconveyance and requested him to get a return of his money from the bank shows that he was unwilling to relinquish the purchase which he had secured. If he had been willing to accept a return of his money, he should have so indicated to Slusher, so that the latter could take some steps to have the bank return it. Having taken his position, he cannot now change it and look to either Brame or the Slushers for the money which he could at that time have gotten from the bank.

It appears from the testimony that while the money was in the Merchants' & Farmers' Bank, either the bank or Smith, the cashier, procured another bank in Texarkana to execute a bond to the Slushers indemnifying them to the extent of five thousand dollars against the loss of the money in bank. As the indemnifying bank is not a party to this suit, we cannot decide whether or not appellant is subrogated to the rights of the Slushers and is entitled to sue on that bond.

We conclude that the decree of the chancellor is correct, and the same is affirmed.

HART and KIRBY, JJ., dissent.